IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Thomas H., ) | |
| ) | |
| *Plaintiff*, ) | |
| ) | Case No. 3:22-cv-50331 |
| v. ) | |
| ) | Magistrate Judge Lisa A. Jensen |
| Kilolo Kijakazi, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| *Defendant*. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Thomas H. brings this action under 42 U.S.C. § 405(g) seeking a remand of the decision denying his application for disability insurance benefits.[1] For the reasons set forth below, the Commissioner's decision is reversed, and this case is remanded.

**BACKGROUND**

On February 12, 2020, Plaintiff filed an application for disability insurance benefits alleging a disability onset date of June 17, 2019. R. 79. His claims were denied at the initial and reconsideration levels. R. 127, 148. Following a hearing in October 2021, an administrative law judge (ALJ) issued an unfavorable decision in January 2022. R. 17–34. After the Appeals Council denied Plaintiff's request for review on August 2, 2022, R. 1, Plaintiff filed the instant action. Dkt. 1.

**I. Medical History**

On June 16, 2019, Plaintiff was acting as a catcher at a softball game when another player accidentally elbowed Plaintiff in the temple while sliding into home base. R. 397. The next day,

---

[1] The parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings pursuant to 28 U.S.C. § 636(c). Dkt. 7.

Plaintiff presented at the emergency room, and reported that he had struck his head on some machinery at work after getting dizzy and falling forward. R. 397. He was diagnosed with post-concussion syndrome and instructed not to return to work before being cleared by his primary care physician or a neurologist. R. 400–01. For the next year and a half, Plaintiff reported constant headaches with steadily worsening migraine symptoms that varied in intensity and duration. Two months after his softball game, Plaintiff reported to his physician that he was experiencing daily headaches of moderate severity. R. 695. He was diagnosed with bilateral occipital neuralgia, treated with a series of occipital and temporal nerve injections, and referred to physical therapy for head pain and balance issues. Seven months thereafter, Plaintiff presented for a checkup and reported that his headaches were occurring more frequently, up to 10-15 times per day. R. 631, 808. He underwent another round of temporal nerve injections. One week thereafter, during a checkup, Plaintiff discussed surgical intervention with his physician, but did not proceed with surgery after his physician reported that he did not want to operate because he felt unsure about the success of the surgery.

One year after the softball game, Plaintiff sought treatment from a facility that specializes in headache management. He reported during his intake that he had been experiencing migraine symptoms for over 24 hours without relief. R. 2370. He was admitted to the inpatient unit as having a status migraine and received intravenous medication to get his migraine symptoms under control. R. 2372. Plaintiff presented at numerous checkup appointments thereafter and reported that he had experienced some relief since his treatment for his status migraine but continued to experience frequent migraines with varying intensity and duration.

## II. The ALJ's Decision

In January 2022, the ALJ issued a decision finding that Plaintiff was not disabled since his alleged onset date on June 17, 2019. R. 17–34. The ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date. The ALJ also found that Plaintiff had the following severe impairments: left shoulder impingement syndrome and tendinosis; cervical spine degenerative disc disease; migraines/occipital neuralgia post-concussive syndrome; obesity; and generalized anxiety disorder. The ALJ determined that Plaintiff's impairments did not meet or medically equal a listed impairment. The ALJ concluded that Plaintiff had the residual functional capacity (RFC) to perform light work with certain restrictions. The ALJ determined that Plaintiff could perform his past relevant work as an assembler of small products as generally and actually performed. The ALJ also determined that there were other jobs that existed in significant numbers in the national economy that Plaintiff could perform, namely light, unskilled jobs.

## STANDARD OF REVIEW

A reviewing court may enter judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). If supported by substantial evidence, the Commissioner's factual findings are conclusive. *Id.* Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). "An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions." *Butler v. Kijakazi*, 4 F.4th 498, 501 (7th Cir. 2021) (quoting *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015)). The reviewing court may not "reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's

3

determination so long as substantial evidence supports it." *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021).

## DISCUSSION

Plaintiff presents several arguments challenging the ALJ's decision, but the Court addresses only those necessary to resolve this appeal. Plaintiff argues that a remand is warranted because the ALJ's analysis as to whether Plaintiff's headaches medically equaled the requirements of Listing 11.02 was perfunctory, and that the ALJ erroneously concluded that Listing 11.02 requires the testimony of a medical expert to establish equivalency. In response, the Commissioner maintains that the ALJ's analysis was not perfunctory, but even if it were, it was harmless error because Plaintiff cannot show that he met or equaled Listing 11.02. For the reasons discussed below, the Court agrees that a remand is required.

"In considering whether a claimant's condition meets or equals a listed impairment, an ALJ must discuss the listing by name and offer more than a perfunctory analysis of the listing." *Wilder v. Kijakazi*, 22 F.4th 644, 652 (7th Cir. 2022) (citing *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). However, the claimant bears the burden of proving that his impairments meet or equal each element of a listed impairment. *Filus v. Astrue*, 694 F.3d 863, 868 (7th Cir. 2012).

Here, in evaluating Plaintiff's impairments, the ALJ found that Plaintiff had a "history of treatment secondary to migraines and occipital neuralgia following a diagnosis of post-concussive syndrome." R. 20. Accordingly, the ALJ found that Plaintiff's "migraines/occipital neuralgia post-concussive syndrome" was a severe impairment. *Id.* As acknowledged by the ALJ, there is no specific listing for a primary headache disorder, such as migraines. R. 22. However, Social Security Ruling 19-4p indicates that Listing 11.02 (Epilepsy) is most analogous for evaluating migraines, noting that a person with a primary headache disorder may exhibit equivalent signs and

limitations to those detailed in paragraphs B or D of Listing 11.02 for dyscognitive seizures. SSR 19-4p, 2019 WL 4169635, at *7. Accordingly, SSR 19-4p provides guidance to ALJs on how to determine whether a headache disorder equals the criteria for Listing 11.02. As it relates to paragraph B of Listing 11.02, SSR 19-4p provides the following:

> Paragraph B of listing 11.02 requires dyscognitive seizures occurring at least once a week for at least 3 consecutive months despite adherence to prescribed treatment. To evaluate whether a primary headache disorder is equal in severity and duration to the criteria in 11.02B, we consider: A detailed description from an AMS [acceptable medical source] of a typical headache event, including all associated phenomena (for example, premonitory symptoms, aura, duration, intensity, and accompanying symptoms); the frequency of headache events; adherence to prescribed treatment; side effects of treatment (for example, many medications used for treating a primary headache disorder can produce drowsiness, confusion, or inattention); and limitations in functioning that may be associated with the primary headache disorder or effects of its treatment, such as interference with activity during the day (for example, the need for a darkened and quiet room, having to lie down without moving, a sleep disturbance that affects daytime activities, or other related needs and limitations).

SSR 19-4p, 2019 WL 4169635, at *7. "Courts analyzing migraine headaches under listing 11.02 have found that equivalence can be shown where migraines occur at these time intervals [at least once a week for at least 3 consecutive months] despite prescribed treatment." *Michelle L. M. v. Kijakazi*, No. 2:22-cv-00151-MKK-JMS, 2023 WL 3835583, at *6 (S.D. Ind. June 6, 2023) (citing cases).

Here, in determining that Plaintiff's migraines did not medically equal Listing 11.02, the ALJ's analysis consisted of the following paragraph:

> Further, while a primary headache disorder cannot meet a specific listing, Social Security Ruling 19-4p instructs that 11.02 for epilepsy is an analogous listing for primary headache disorders. The claimant may equal listing 11.02 if his headaches manifest in the same manner as reflected in 11.02 subparts B or D, *and* the testimony of a medical expert establishes that the primary headache disorder *equals* the severity of the listing. Again, no treating or examining physician has cited findings equivalent in severity to the criteria of listing 11.02.

5

R. 22 (emphasis in original).

Considering the requirements set out in SSR 19-4p, this Court agrees that the ALJ's analysis of Plaintiff's migraines under Listing 11.02 was perfunctory. *See Amy O. v. Kijakazi*, No. 21-CV-2416, 2022 WL 16696266, at *3 (N.D. Ill. Nov. 3, 2022) (remanding because "[c]omparing the requirements of SSR 19-4p to the ALJ's Step Three discussion, it is clear to the Court that the ALJ did not adequately discuss all the relevant factors"). Other than identifying SSR 19-4p and Listing 11.02, the ALJ provided no evaluation of the relevant criteria to determine listing equivalency.

In addition to not evaluating the relevant criteria, the ALJ incorrectly stated what was required under SSR 19-4p and Listing 11.02. The ALJ found that Plaintiff's migraines could equal Listing 11.02 if his headaches manifested in the same manner as reflected in paragraphs B or D of Listing 11.02, "*and* the testimony of a medical expert establishes that the primary headache disorder *equals* the severity of the listing." R. 22 (emphasis in original). However, SSR 19-4p only requires a detailed description from an acceptable medical source of a typical headache event and all associated phenomena and related limitations. *See* SSR 19-4p, 2019 WL 4169635, at *7. It does require Plaintiff to offer the testimony of a medical expert. Even considering the ALJ's entire decision, this Court finds that the ALJ did not properly analyze medical equivalency as outlined in SSR 19-4p.

Nevertheless, even if the ALJ's analysis was perfunctory, "[courts] will not remand a case to the ALJ for further specification where [they] are convinced that the ALJ will reach the same result." *Butler*, 4 F.4th at 504 (quoting *McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011)). An ALJ's error is harmless if the court can "predict with great confidence what the result of remand will be." *Id.* (quoting *McKinzey*, 641 F.3d at 892).

To equal Listing 11.02, Plaintiff needed to show that he suffered a medically severe migraine headache at least once per week for three consecutive months despite adherence to prescribed treatment. *See Michelle L. M.*, 2023 WL 3835583, at *7. Even a brief review of the record reveals an abundance of evidence from Plaintiff's treating physicians that describe Plaintiff's typical headache events, the frequency of his headaches, his limitations in functioning, and his adherence to prescribed treatment. *E.g.*, R. 631-62 (treating physician describing Plaintiff's typical headache event, and stating that Plaintiff has daily headaches, is compliant with treatment, and that his headache associated symptoms include nausea, photophobia, sonophobia, and dizziness); R. 710 (treating provider describing Plaintiff's typical headache event, and stating that Plaintiff has headaches 4-5 times per day, is compliant with treatment, and struggles with balance, dizziness, light sensitivity, noise sensitivity, mental fog, and difficulty concentrating and remembering); R. 715 (treating provider describing Plaintiff's typical headache event, and stating that Plaintiff is affected by nausea, balance problems, dizziness, light sensitivity, noise sensitivity, mental fog, and difficulty concentrating and remembering). This medical evidence could support a finding that Plaintiff medically equaled Listing 11.02.

Nevertheless, the Commissioner argues that the ALJ's RFC discussion and assertion that "[Plaintiff's] migraine allegations were inconsistent" serves as the ALJ's analysis and determination that Plaintiff could not equal Listing 11.02. Def.'s Resp. at 6–7, Dkt. 20. The Commissioner cites *Overton v. Saul*, 802 Fed. App'x 190 (7th Cir. 2020) (unpublished), to argue that because there is no objective measure for migraine symptoms, the ALJ's subjective symptoms evaluation "made clear" that Plaintiff's allegations were inconsistent in terms of severity and frequency and therefore did not equal Listing 11.02. Def.'s Resp. at 6, Dkt. 20. However, the Commissioner's "attempt to supply a post-hoc rationale" for the ALJ's decision "runs contrary to

7

the *Chenery* doctrine" and is improper. *Lothridge v. Saul*, 984 F.3d 1227, 1234–35 (7th Cir. 2021); *see also Jeske v. Saul*, 955 F.3d 583, 587 (7th Cir. 2020) ("Our review is limited also to the ALJ's rationales; we do not uphold an ALJ's decision by giving it different ground to stand upon."). Here, the ALJ explicitly found that Plaintiff's migraines did not medically equal Listing 11.02 because "no treating or examining physician has cited findings equivalent in severity to the criteria of listing 11.02." R. 22. The ALJ's perfunctory and misguided step three analysis, and the remainder of the decision, give no indication that the ALJ found Plaintiff did not equal Listing 11.02 because his subjective symptoms were discounted. Considering the above medical evidence, and the ALJ's failure to analyze such evidence appropriately under the relevant factors outlined in SSR 19-4p, this Court cannot predict with great confidence that the ALJ will reach the same conclusion as to Listing 11.02 on remand. As such, a remand is required.

On remand, the ALJ must properly evaluate whether Plaintiff's migraines medically equal Listing 11.02. *See Jennifer R.*, 2023 WL 2631726, at *4; *Corey Z.*, 2019 WL 6327427, at *4; *Michelle L. M.*, 2023 WL 3835583, at *7. In performing this analysis, the ALJ should consult an impartial medical expert, who can opine on whether Plaintiff's migraine headaches medically equal Listing 11.02. *See Barnett*, 381 F.3d at 670–71 (remanding where the ALJ's assumption of absence of equivalency without any relevant discussion and without consulting an expert's opinion could not support the decision to deny benefits). In light of this Court's remand, it will not address Plaintiff's remaining arguments. However, Plaintiff's counsel should raise all issues argued on appeal with the ALJ on remand, both in a pre-hearing brief and at the administrative hearing. Failure to explicitly raise these issues may result in a waiver if this case is again appealed to this Court.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment is granted, and the Commissioner's motion is denied. The Commissioner's decision is reversed, and the case is remanded for further proceedings consistent with this opinion.

Date: September 29, 2023  By: *Lisa A. J[ensen]*
Lisa A. Jensen
United States Magistrate Judge